STATE, MORRIS CANAL AND BANKING COMPANY, PROSE-CUTORS, v. JOHN B. HAIGHT, COLLECTOR OF REVENUE OF JERSEY CITY.

1. The lands under the tide-water granted by the state to the Morris Canal and Banking Company, by act of March 14th, 1867, are liable to taxation.
2. The proviso in section two takes them out of the exemption in the original charter.
3. By the true construction of this act, a freehold and not a leasehold estate is granted.
4. If some of the means of collecting a tax, as by lien on land, cannot be made effectual, it does not follow that the whole assessment will be void.
5. If taxable and not taxable property are joined in one assessment, and the whole amount is not greater than the value of the taxable, it will be sustained.

On *certiorari* to remove assessment.

For the annual tax due in 1867, for state, county, and city purposes, one of the assessors of Jersey City assessed the Morris Canal and Banking Company the total sum of $5478, upon "South basin to the line of the Central Railroad of New Jersey, south of South street, with piers, bulkhead, and water front."

This assessment was certified to this court for review, and many reasons assigned for setting it aside. These appear in the opinion of the court, so far as they are material.

Argued before Justices SCUDDER and VAN SYCKEL.

State, Morris Canal and Banking Co., pros., v. Haight, Collector.

For plaintiffs, *I. W. Scudder.*

For defendant, *S. B. Ransom.*

SCUDDER, J. The State of New Jersey, by statute approved March 14th, 1867, granted to the Morris Canal and Banking Company all the right, title, and interest of the state in and to certain lands under water, defined by boundaries, on condition that the gaps between the easterly and westerly bulkheads, and other structures that might be erected, should be kept open one hundred and fifty feet wide, so that the public might with all vessels freely navigate to and from the channel of the Hudson river, and all places east and west of said westerly bulkheads, without the payment of toll or charges.

The second proviso in the first section is as follows: "And provided further, that the said company shall, within ninety days after the passage of this act, execute and deliver to the governor of this state their promise and undertaking, under seal, unconditionally to pay into the treasury of this state, yearly, the sum of twenty-five thousand dollars per year, on or before the first Tuesday of January in each year, during the continuance of their charter, and so long as the said company, their successors or assigns, shall continue to hold or occupy the same, the first payment of a ratable portion of which shall fall due on the first Tuesday of January, eighteen hundred and sixty-eight; it shall be lawful for the said company, instead of the said annual payment of twenty-five thousand dollars, to pay into the treasury of this state, at any time, the sum of three hundred and fifty-seven thousand one hundred and forty-two dollars."

It was further enacted that the said company might, under the provision of their charter, construct piers, wharves, docks, basins, warehouses, and other structures within the limits above described, and make reasonable rules and regulations for the use thereof, to enable them to carry on a transportation business in and over their canal and elsewhere, which they were thereby overpowered to do, and also to afford

facilities for commerce; *"provided, that the exemption of said company in its original charter, from taxation, assessments or other legal impositions, shall not extend to the property or privileges hereby granted."*

The act was to be in force during the continuance of their charter, and at the expiration of that time the lands thereby granted, with the improvements thereon, should revert to the state on the same terms and conditions provided in the original charter of the company, respecting the transfer of the property thereof to the state.

These terms are, that the state, at the end of ninety-nine years from the passage of the act, (December 31st, 1824,) may take the canal and appurtenances at a valuation by commissioners, and if this be not done within one year thereafter, the charter shall continue for fifty years longer, when it shall cease, and the canal and appurtenances become the sole property of the state.

Section four of the charter exempts from tax, generally, such estate or property as is possessed, occupied, and used by the said company, for the actual and necessary purposes of said canal navigation under the act, according to the true intent and meaning thereof.

June 10th, 1867, the company executed and delivered to the governor of this state their promise and undertaking, under seal, according to the second proviso of the first section, and have been since that time in the possession and use of said premises, paying the stipulated annual price for such possessions and enjoyment.

As a general description of the situation of the property named in the grant from the state, it may be sufficient to say that the outlet lock of the canal company is at Washington street. East of this, and extending to Hudson street, is what is called the north canal basin, opening southerly between two piers, through an outlet, into what is known as the south or shipping basin, which extends southerly to the northerly line of the Central Railroad Company's dock. There are two unfinished piers projecting northerly from the Central Rail-

road Company's line into this shipping basin. There are also two larger piers opposite to them on the southerly side of the north basin, and between these opposite piers are the gaps referred to that are to be left open for navigation.

The tide ebbs and flows over all the premises granted by the state to the prosecutors under the act of 1867, and it is not uncovered by the water at low tide.

The peculiar quality of the property granted by the state gives rise to the questions that are discussed. It is said that land covered with water where the tide ebbs and flows is not the subject of a grant, so as to make it liable to taxation in the hands of a person claiming under the state. It can hardly be insisted by the prosecutors that the state had no right to make the transfer to them, because it would invalidate their own title, and so long as they continue to hold, and claim an exclusive right to appropriate and enjoy the premises, they cannot deny the only title they have or can have. The land covered by the basin and piers lies within the exterior line defined by the state for improvement. It is bounded on the north and south by docks, wharves, and piers extending out towards the Hudson river, beyond the easterly line of the description, and there can be no doubt that to this extent at least, the state could make such title as has been done by legislative grant. If this be so, then whoever takes under this title, holds it with the incidents of ownership, as land or any other kind of property is held. One of these incidents is the liability to taxation. In *State, Bentley, pros.*, v. *Sippel*, 1 *Dutcher* 530, it was decided that where a license is given to the owner of land lying on a navigable stream to wharf out below high water mark, so far as the grant extends the property is vested in the grantees, and is liable to taxation. See also *State, Coles, pros.*, v. *Platt*, 4 *Zab.* 108.

In the present case, by express legislative action this exclusive property, and right to improve and hold, is granted to the prosecutors. There is nothing, therefore, in the kind of property granted that excludes the right of taxation, after the title has passed from the state.

If this be so, then it remains to be considered whether there is any limitation or exception of this right of taxation by reason of the kind of estate granted by the statute. It is said that the state is still the owner of the land, and that the relation between it and the prosecutors is that of landlord and tenant; that they hold under an annual rental, with no higher title than mere tenancy, and, as such tenants, are not liable to pay tax for the state's land. But the proper construction of the act under which the prosecutors claim, makes it more than a mere lease. It is, in words and substance, a grant for the whole life of the corporation, with provision for an extension beyond, in case of a further continuance of the charter. The consideration is an annual payment with the privilege to pay a gross sum in lieu thereof. Something better is intended than a mere tenancy from year to year, or for a term of years. An estate is vested in the prosecutors, which is the subject of taxation. It is an estate of freehold, ending with the existence of the corporation, and the estate then reverts, as in an estate for life, at the dissolution of the corporation, under section three of the act of 1867. *Angell & Ames on Corp.* 172, 195, (6th ed.); 2 *Pres. Est.* *44, &c.

The payment secured to be made to the state in this act has been likened to a quit rent. It is not so, in effect, nor can it be so in law, because we have not the incidents of the estate from which such rents were derived at common law. These incidents were feudal in their origin, and no longer exist in our law. 2 *Black. Com.* 42; 2 *Bouv. L. D.* 402.

That it was the intention of the legislature that the premises described in the act, and all the improvements to be made thereon by the grantees, should be taxed, seems to be clear from the proviso to the second section. This states expressly that the exemption of said company in its original charter from taxation, assessments, or other legal impositions, shall not extend to the property and privileges hereby granted. To this the company assented when they filed a formal acceptance of this supplement. It was then clearly the understanding and intention of the parties that the property and privileges

thereby granted should be liable to taxation. If this were not so, why is there this careful exclusion of a constructive exemption? As to the objection that there is a limitation of the enjoyment of the south or shipping basin, because there are gaps between the piers to be kept open for the use of others, it is sufficient answer to say that such is the burden voluntarily assumed by the prosecutors, and to which they have consented by their acceptance of the act. There is no exception of any part from taxation on this account, and no taxable estate is granted to others who may use the gaps in common with this company.

Another reason urged is, that if these premises are real estate, then the city may have a lien for taxes, and sell the same, under the charter of Jersey City, (*Laws of* 1851, *p.* 411, § 48,) and that thereby the consideration of the grant may be lost to the state. Not so, for only the estate and interest which the prosecutors have, *cum onere*, can be sold; and if this result should render the remedy of the city ineffectual against the land for the collection of the tax, this would not render the assessment illegal. It does not follow that the whole assessment will be void because it may happen that some of the means authorized to be used for collecting the tax cannot be made effectual. *State* v. *Platt,* 4 *Zab.* 108.

Neither will it avoid the assessment because some of the piers and bulkheads were constructed before the grant from the state in 1867, and are within the south basin, and are part of the property assessed. These piers, &c., in fact, cover but a small part of the large area of forty and two hundred and fifty-seven thousandths acres, granted by the state to the prosecutors.

It is true, as was insisted, that it was held in *State* v. *Bates,* 4 *Zab.* 556, that these improvements, being property held and occupied by the company for the actual purpose of canal navigation, are exempt from taxation; but it is also true that upon further assurance of title by grant of the land upon which these piers are built, by the supplement of 1867, it is

expressly provided that this exemption in the original charter shall not extend to the property or privileges thereby granted.

And if this were not so—if a part is not taxable, and property that is taxable is joined with it, so that all are taxed together, as in the case of a person who claims lands above and below high water mark, both of which are assessed together—if the assessment is not made for an amount greater than the value of the taxable property, it will be sustained. *State* v. *Jersey City,* 1 *Dutcher* 525.

It appears, from the return and evidence in this case, that the whole premises are only taxed at the amount of the consideration to be paid by the company for them. There is, therefore, no excess in the valuation of the property.

This disposes of all the material reasons assigned for setting aside the assessment, and it is, therefore, affirmed.

Justice VAN SYCKEL concurred.

AFFIRMED 7 *Vr.* 471.
CITED *in State, Morris Canal and B'k'g Co., pros.,* v. *Love,* 8 *Vr.* 61.